# New Bell Jellico Coal Company v. Stewart's Administratrix.

(Decided October 22, 1913).

## Appeal from Bell Circuit Court.

1. Settlement—Fraudulent Settlement of Personal Representative.—
A settlement entered into by a personal representative for the
purpose of defrauding a distributee of the estate is a settlement
to defraud the estate, and will not be upheld as between the
estate and the other party, such party being cognizant of the pur-
pose.

2. Settlement—Action by Beneficiary Who Was Not Party to Set
Aside—Tender of Amount Paid Not Necessary.—Where a settle-
ment made by an unfaithful trustee is sought to be set aside by
a beneficiary who was not a party to the settlement, no tender of
the amount paid to the fiduciary is necessary.

3. Personal Representatives—Fraudulent Settlement—Recovery of
Larger Amount—Distribution.—A personal representative, who is
also a distributee, who fraudulently makes a settlement to defeat
another distributee, will not, when the other distributee repu-
diates the settlement and recovers a larger amount, be permitted
to participate in the distribution of the larger amount. Such dis-
tributee and the debtor, who was cognizant of the fraudulent
purpose, will be left where they are found.

O'REAR & WILLIAMS, WM. LOW for appellant.

J. D. TUGGLE, J. M. GILBERT, W. R. LAY and J. D. MAIN for
appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In December, 1910, Dan Stewart, an employee of ap-
pellant, was killed in an accident at its mines; shortly
thereafter his mother, Rhoda Stewart, qualified as ad-
ministratrix of the estate, and immediately filed an ac-
tion against appellant seeking damages for his death by
reason of its negligence.

In February, 1911, appellant filed its answer, denying
negligence. Thereafter in April, 1911, the general man-
ager of appellant and Rhoda Stewart as administratrix
agreed upon a settlement, and each signed an agreed
judgment to be entered in the case.

Dan Stewart was an unmarried man, and his mother
and father were his only heirs. Before the entry of the
agreed judgment, Martin Stewart, the father of the de-

cedent, appeared in court and filed his petition to be made a party thereto, alleging that Rhoda Stewart and the appellant acting in collusion with each other had entered into a fraudulent scheme to defraud him out of his distributable share of his son's estate, and to defraud the estate; and that the administratrix was not in good faith prosecuting this action, and asked the court to permit him to become a party and prosecute the same for the use and benefit of Dan Stewart's estate. This the court permitted him to do, and the issues were thereafter made up between Martin Stewart acting in that way and the appellant, and the trial resulted in a verdict for the plaintiff for $11,000, credited by $850 theretofore paid to Rhoda Stewart, and it is from the judgment on that verdict that this appeal is prosecuted.

No questions are made except such as are incident to, and grow out of the settlement made by appellant and Rhoda Stewart.

After the signing of the agreed judgment by Rhoda Stewart as administratrix she took no further steps in the action whatever, and is not now complaining of that settlement; but all steps taken in that direction have been by Martin Stewart under the order of the court permiting him to prosecute the action for the benefit of Dan Stewart's estate.

At the time of the settlement Martin and Rhoda Stewart, father and mother of decedent had been separated and divorced for many years, and Martin Stewart had moved to another country some distance away, and remarried.

The chief incentive which Rhoda Stewart had for entering into the compromise settlement was to prevent Martin Stewart, whom she charged with deserting her and her children, from receiving any part of it.

When the manager of appellant approached her with a view of settling the suit she sent for her son, Henry Stewart, and he was present at the interview the greater part of the time.

Rhoda Stewart's testimony, as to the settlement, is that appellant's manager came to her home seeking a settlement of the suit, and that she told him that she did not see how she could do it without seeing her attorneys; and that she then 'sent for her son, Henry, who came shortly; that the manager told her that he wanted to settle it with her in such way that she (Rhoda Stewart) would get the bulk of the money, and knock Martin and

her attorneys out.   That she told him that she did not want Martin Stewart to have any of it, and was willing to compromise it to keep him from getting any of it; that he said he could fix it in a way to knock Martin and the attorneys out; that he would write a check for $200, and that she could tell her lawyers that was all she got in the settlement, and that he would pay her $650 more in cash, and that she could keep that and not tell anyone about it; that the agreed judgment was prepared and signed by the parties, and her son, Henry, went with the manager to Pineville and brought back the $200 check and the $650 in cash to her; that her attorneys repudiated the settlement she had made, and declined to have anything to do with the $200 check, and that she held the same, and collected it two or three months later.

Henry stewart testified in substance the same as his mother, and further that the check for $200 was made payable to Rhoda Stewart and her three attorneys; that the manager told him to show it to the lawyers, and if they would not sign it to put it in Black's Bank at Barboursville, and also to keep the $650 in cash hid so as not to let the lawyers or Martin Stewart know anything about it, so they could not "get in on it."

The testimony of the manager, while denying some of the material statements of Rhoda and Henry Stewart, shows that he was fully apprised of the purpose of Rhoda Stewart to so settle the case as to prevent Martin Stewart from receiving any part of the money.

Under our Statute (section 3882), a personal representative may compromise and settle a claim for damages growing out of the death of the decedent.

It is earnestly argued by appellee that the fact that Rhoda Stewart, at the time of the settlement made it in such way as to aid her in defrauding Martin Stewart out of his distributable share of Dan Stewart's estate, is no reason why the settlement between her as administratrix and the company is not binding, there being no evidence of an intention upon her part to take an amount less than she considered a fair settlement and there being no purpose upon her part as administratrix to favor the company.

But the fallacy of this argument is apparent.   The company had knowledge of Rhoda Stewart's fraudulent purpose, and actually aided her in carrying it out by making the payment in such way as to enable her to conceal from Martin Stewart and her attorneys the real

terms of the settlement. To hold that one may enter into a fraudulent scheme with a personal representative for the purpose of enabling the fiduciary to keep the money paid in the settlement instead of properly distributing it according to law, and then say that the settlement should be upheld because there was no fraud as between the parties to it, would offer an easy way for unfaithful fiduciaries to defraud estates intrusted to them.

Manifestly this settlement cannot be upheld as against the estate of Dan Stewart, or his creditors or distributees other than Rhoda Stewart.

But it is insisted that the effect of the settlement cannot be evaded until there has been tendered or paid back the amount paid in the settlement, and we are cited to the case of Wells v. Royer Wheel Company, 114 S. W., 737, and the authorities there cited.

But an examination of those cases will show that in each of them the settlement was attacked by the party who made it, and who was necessarily in possession of all the facts with reference to it. While here neither of the parties who made the settlement are attacking it; but it is being attackd by a distributee of the estate of the decedent which was defrauded in the settlement. He cannot know, and as the record shows did not know, until the pleadings were finally made up in this action what the terms of that fraudulent settlement were.

But if he *had* known at the time he intervened in this action, it would not have been necessary for him to have made the tender; the money was not paid to him, and he had not received one cent of it. The theory upon which the tender in the cases referred to is required, is that a plaintiff will not be permitted to collect money from a defendant under the guise of a settlement, and then repudiate the settlement and use the money so received in an effort to secure a greater amount. The reason of that rule is not applicable under the facts of this case.

But should this judgment stand in so far as it may be for the benefit of Rhoda Stewart as distributee of Dan Stewart's estate? Her own evidence is that she entered into this secret and fraudulent settlement for the express purpose of preventing Martin Stewart from receiving any part of such recovery as might be had in this case. She, acting in a fiduciary capacity, deliberately and avowedly undertook to settle this suit in such

a secret and covert way as to defraud him of his rights as distributee.

But it is argued that her action in making the settlement was not a fraud against the estate of Dan Stewart, but merely against one of the distributees, and, therefore, she should be allowed to participate in this recovery as distributee; but it is difficult to understand how she could have carried out her expressed purpose of defrauding one of the distributees of that estate, out of the money going to such distributee, and convert it to her own use, without defrauding the estate.

In that settlement it is true she was acting nominally only in her fiducial relation, but at the time she was a distributee.

Now after making that settlement of which she made no complaint, should she be permitted to share in a recovery brought about by another distributee of that estate in spite of her fraudulent settlement?

There are two reasons why this settlement in so far as it affects her as distributee cannot be set aside; (1) she has not asked that it be done; and (2) she being a party to the fraud, and it appearing that both she and the company were in fraudulent collusion they will be left where they are found.

Her unconscionable attitude in this record debars her from participation in the distribution of that fund; she should not be permitted to stand by and see another unearth and set aside a fraud to which she was a party, and then become a beneficiary.

We have been cited to no authority, and have none at hand, holding that a personal representative, who is also a distributee, may enter into a fraudulent scheme to enrich himself at the expense of the estate, and then afterwards when other beneficiaries have set aside the fraudulent contract so made by him, and recovered for the benefit of the estate a much larger sum than he contracted for, participate as distributee in such recovery.

No one can be permitted to profit by his own fraud, and likewise no one will be permitted to participate as distributee or otherwise in a fund, recovered in spite of his fraud.

The administratrix has been confessedly unfaithful to her solemn trust, and to allow her to receive half of this fund would be to reward her for her perfidy.

It is argued that to credit this judgment by the distributable share of Rhoda Stewart would be in effect to

reward appellant for entering into this fraudulent contract; and unfortunately that is true. But the universal rule is that parties to unconscionable contracts, will, as between themselves, be left where they are found. She cannot share in a fund, the collection of which she, as administratrix, fraudulently attempted to prevent.

The judgment is reversed, but upon the return of the case the verdict will not be set aside; the court will, however, after it be determined what the debts against the estate of Dan Stewart are, including the attorneys' fees in this case, and deducting the same from the amount of the judgment, credit the balance by one-half thereof or the distributable share of Rhoda Stewart, and adjudge the remainder to Martin Stewart.