## Harbison-Walker Refractories Company, et al. v. McFarland's Administrator.

(Decided November 21, 1913).

### Appeal from Carter Circuit Court.

1. Submission—When Will Not Be Set Aside—Rule as to—Supplementing Record.—As a general rule the submission of a case will not be set aside, over the objection of the appellee, to permit the appellant to supplement his record; but this rule does not apply in all of its strictness to the appellee, who did not make up the record, and who has the right to rely upon the certificate of the clerk to the effect that the transcript contained the whole record. In such cases the appellee will be permitted to supplement the record by filing the omitted parts, provided he has not been guilty of negligence.

2. Action—Trial—Clerical Misprision.—Where one of several defendants against whom the action could have been maintained without joining the other defendants, files an answer and participates in the trial of the case without objection, he will not be permitted, after judgment, to say that the court has committed a clerical misprision by rendering judgment before the action stood for trial, under section 367 of the Civil Code of Practice.

3. Corporations—Where One Corporation Transfers Assets to Another Without Having Paid Its Debts—Liens.—Where one cor-

poration transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation.

4. Equity—Section 90 Civil Code—Relief.—Under section 90 of the Civil Code, upon issue joined in an action in equity, the court may grant any relief that the parties may show themselves entitled to, whether it is specifically prayed for or not, if the petition contains a prayer for general relief.

5. Attorneys—Discharge of Before Action is Tried—No Lien Upon Judgment Subsequently Recovered by Another Attorney.—An attorney employed to bring an action for damages for personal injuries under a contract for a contingent fee, may be discharged before the action is tried; and, in such a case, he has no lien upon a judgment subsequently recovered by another attorney in a different action; and said attorney is not a necessary or proper party to a creditor's bill to collect the judgment.

6. Damages—Action for Damages for Death of Intestate—Who May Maintain.—The exclusive right to maintain an action to recover damages for the death of an intestate, is vested in his personal representative; and neither the widow of the intestate nor her assignee has the right to maintain such an action, or to intervene in a creditor's bill brought by the personal representative to enforce the payment of a judgment obtained in such an action.

THEOBOLD & THEOBOLD for appellants.

SCOTT & HAMILTON, H. L. WOODS and GEORGE W. ARMSTRONG for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On August 20th, 1902, Newton McFarland was killed in the mines of the "Harbison & Walker Company, Southern Department", in Carter County, Kentucky, while in the service of that company. His wife, Dora McFarland, qualified as administratrix, and employed Frank Prater to bring a suit against the company, for damages, agreeing to give Prater, as a fee, a sum equivalent to one-half of the recovery.

Prater filed the action, but before it came to trial Mrs. McFarland caused it to be dismissed. She also resigned as administratrix, and consented to the appointment of her brother-in-law, Lewis White, as administrator in her stead. White ignored Prater and his contract, and on February 9th, 1903, through other attorneys, he instituted a new action in the Carter Circuit Court to recover damages for the death of McFarland. A trial of the second action resulted in a peremptory instruction for the defendant; but upon appeal to this court that

judment was reversed, and the case remanded to the circuit court, where it was again tried and resulted in a verdict and judgment for the plaintiff for $10,000.00. Upon an .appeal by the company this court affirmed the judgment on December 3rd, 1908. Harbison & Walker Company, Southern Department v. McFarland, 114 S. W., 250.

An execution issued upon this judgment, and was returned "no property found."

As Newton McFarland left no family except his wife, she was entitled to the entire net recovery, after the payment of debts and the expenses of administration.

In February, 1906, Dora McFarland sold her interest in the judgment against the company to Sheets; in November of the same year Sheets sold and transferred the interest thus acquired to Edwards; and on January 30th, 1908, Edwards in turn sold it to Turley, who is the present owner of whatever interest Dora McFarland had in the judgment.

On January 16th, 1909, McFarland's administrator instituted this action under section 439 of the Civil Code of Practice, against the defendants, "Harbison & Walker Company, Southern Department", the Portsmouth Harbison-Walker Company, the Harbison & Walker Refractories Company, Albert Sheets, George W. Armstrong and H. L. Woods, for the chief purpose of compelling the Harbison & Walker Refractories Company to pay this judgment.

The "Harbison & Walker Company, Southern Department," is a Kentucky corporation, incorporated July 1st, 1901, with an original capital of $100,000.00, which was subsequently increased to $200,000.00. It owned and operated a large plant, tram road and right of way, in mining and manufacturing fire-clay products in Carter County. The uncontradicted proof shows that its property was, in August 1902, worth not less than $200,000.00.

Subsequently, the principal owners and stockholders of the "Harbison & Walker Company, Southern Department", incorporated the Portsmouth Harbison-Walker Company, under the laws of Ohio, with a capital of $600,-000.00. On June 30th, 1902, they incorporated the Harbison & Walker Refractories Company, under the laws of Pennsylvania; and this last named corporation controlled the policy and the management of the business of the "Harbison & Walker Company, Southern Department". Evidently it was incorporated for the especial

purpose of taking over the properties of that corporation and of other corporations doing a like business, and conducting them under a single management.  One set of stockholders either directly or indirectly controlled each of these several corporations; they were all under a common ruling power.

On March 28th, 1903, the "Harbison & Walker Company, Southern Department", by a deed regularly acknowledged and recorded in the Carter County Court Clerk's office, transferred its entire property and assets to The Portsmouth Harbison-Walker Company; and on May 31, 1907, The Portsmouth Harbison-Walker Company, in a similar manner, transferred all of its property and assets, including that which it had received from the "Harbison & Walker Company, Southern Department", to the appellant, the Harbison-Walker Refractories Company.  These several transfers were accomplished merely by the purchasing companies taking over the assets of the selling companies, and issuing stock of the buying company whenever it was practicable, to the stockholders of the selling company in lieu of their original stock.  This was the general plan, though in some instances it was necessary to make other arrangements, and sometimes to pay the holders of stock who would not agree to the merger.  In this way the Harbison-Walker Refractories Company, which we will hereafter call the Refractories Company for brevity, acquired all the property and assets of the "Harbison & Walker Company, Southern Department", thus leaving the last named company, as well as The Portsmouth Harbison-Walker Company, mere paper companies, or mere shells, as one witness calls them.  They have a nominal existence, but own no property, and do no business. It appears from the record, however, that perhaps all the debts of the "Harbison & Walker Company, Southern Department", have been paid except this judgment debt recovered by McFarland's administrator.

The Refractories Company removed this action to the federal court, but that court remanded it to the State court, whereupon the Refractories Company answered setting up four defenses: (1) a traverse of the petition; (2) that it bought the property of the "Harbison & Walker Company, Southern Department", from The Portsmouth Harbison-Walker Company without any knowledge of the pendency of the action by McFarland's administrator against the "Harbison & Walker Com-

pany, Southern Department;'' that it was not a party to or a privy to that action; that if it be required to pay said judgment it would operate as an impairment of its contract of purchase from the Portsmouth Harbison-Walker Company; (3) that this action is an attempt to take from the Refractories Company its property to pay a judgment which is not binding on it, and to do so would be a taking of its property without due process of law, and in violation of the 14th Amendment to the Constitution of the United States; and (4) that there was a defect of parties, in that Frank Prater was a necessary party to the action.

A demurrer was properly sustained to the second and third paragraphs of the answer, since they presented no defense to the cause of action asserted against the Refractories Company by reason of its taking over the assets of the judgment debtor corporation.

The circuit court gave a personal judgment against the Refractories company for $10,000.00, with interest from October 7, 1905, and costs; and from that judgment it appeals.

Proof was taken showing the relations of the several companies to each other; the purchase of the assets of the "Harbison & Walker Company, Southern Department", and the payment therefor in the manner above set forth.

There is little controversy as to the facts. After the evidence had been taken, the parties stipulated of record as follows:

"It is agreed that the defendant Harbison & Walker Company, Southern Department, is a Kentucky corporation and that on the 28th day of March, 1903, said corporation sold and conveyed all its property to the Portsmouth Harbison-Walker Company, an Ohio corporation and that on the 31st day of May, 1907, the said Ohio corporation sold and conveyed all of said property to the defendant Harbison-Walker Refractories Company, which is a Pennsylvania corporation and that the defendant Harbison-Walker Refractories Company is now the owner of all the works and property owned by the Harbison & Walker Company, Southern Department, when the original action was filed of Lewis White, Admr. of Newton McFarland v. Harbison & Walker Company, Southern Department, in which the judgment set out in the petition was rendered."

1. Since this action was submitted, the appellee has tendered a supplemental record showing the affidavit

upon the part of McFarland's administrator, in which it appears that the Portsmouth Harbison & Walker Company is a foreign corporation, without any officer or agent in this State known to the affiant; a warning order appointing an attorney for said non-resident defendant, the Portsmouth Harbison-Walker Company, and the order of March 5, 1912, overruling the motion to quash the return of the summons against the "Harbison & Walker Company, Southern Department." It appears from the affidavit of the clerk that those papers were omitted from the original record because of the failure of the index to show the entry of these orders.

While we are not inclined, as a general practice, to set aside the submission of a case for the purpose of allowing the appellant to supplement his record, over the objection of the appellee, this rule does not apply in all of its strictness to the appellee, who did not make up the record, and who has the right to rely upon the certificate of the clerk to the effect that the transcript contained the whole record. In such cases the appellee will be permitted to supplement the record by filing the omitted parts, provided he has not been guilty of negligence. Leonard's Admr. v. Cowling, 121 Ky., 635. The motion to file the supplemental record will be sustained.

2. It is urgently insisted by appellant that the circuit court erred in submitting the case for trial against the Refractories Company, which was before the court, without first having dismissed the action against those defendants who were not before the court.

Section 367 of the Civil Code of Practice reads as follows:

"If the summons in an equitable action have been served in due time on part only of the defendants, the plaintiff may dismiss his action as to those not summoned, and proceed to trial as to the others, if he could have maintained his action against them without joining those not summoned."

Section 517, of the same book, further provides, in part, as follows:

"It shall be deemed a clerical misprision (1) to render judgment before the action stood for trial pursuant to the provisions of this Code."

This action was maintainable against the Refractories Company without joining the defendants who were not summoned. Appellant relies principally upon Wright v. Bickel, 22 Ky. L. R., 529, 58 S. W., 470, in sup-

port of its claim that the trial court erred in proceeding to a trial without first dismissing the action as to the other defendants. It will be observed, however, that in Wright v. Bickel, the defendant had failed to answer, and had permitted a default judgment to go against him. Having that in mind, the court said that Wright was entitled to rely upon the fact that Green had been made a defendant, and that no steps could be taken against Wright until Green was before the court, or the action dismissed against him, if he was a necessary party; and in view of that fact the judgment was prematurely rendered against Wright. But the case here is entirely different; for not only did the Refractories Company remove the case to the Federal court; file its answer after it was remanded to the State court, and take proof over a period of several years, but it finally participated in the trial of the action which resulted in the judgment against it, without ever having objected to the trial or the submission. The appellant filed its petition for a removal at the March term 1909. At the June term of that year the action was continued to the October term; at the October term the action was again continued to the March term, 1910; and at the March term, 1910, the action was again continued and was not tried until the March term, 1913.

Moreover, when at the March term, 1913, the plaintiff moved the court to set aside the order of submission and permit him to file an amended petition enlarging the prayer of the original petition, the appellant objected, and the action remained under submission because of the appellant's objection.

The section of the Code above quoted is for the protection of a defendant, and was not intended to provide for him a means by which he could, without objection, try the case upon the merits, and then rely upon a technical point of practice which he had waived. Appellant has in no way been prejudiced by the trial of this action without its dismissal against any of the other defendants; and having participated in the trial, without objection, it will not now be permitted to complain that the trial was premature.

In C. & O. Ry. Co. v. Conley, 136 Ky., 602, we said:

"It is not the policy of the practice in this State to encourage the trapping of the unwary or unskillful in the art of pleading. On the contrary, it is to present for the court or jury the true issue in dispute, the ques-

tion of merit about which the parties disagree.  Section 134 of the Civil Code of Practice authorizes the trial court to 'at any time,' 'in the furtherance of justice, and on such terms as may be proper, allow or cause a pleading to be amended,' by correcting a mistake in any respect, or 'by inserting other allegations material to the case.' * * * The law is more concerned with bringing the real dispute to final issue and trial, in which justice may be meted out to the parties as the law is, than with the matter of mere convenience, or even neglectful or artful preparation of a cause, or in determining it otherwise than upon its merits."

There is no merit in this point.

3. Upon the merits of the case we are of opinion that the trial court properly required the Refractories Company to pay this debt.

As above stated, these three companies were under a common management, and the assets of the original debtor, the "Harbison & Walker Company, Southern Department," were transferred ultimately to the Refractories Company, and paid for as above indicated The "Harbison & Walker Company, Southern Department," as well as the Portsmouth Harbison-Walker Company, were, in reality, merged into the greater corporation, the Refractories Company, and the method of accomplishing that end can not change the rights of creditors, since it resulted in a transfer of all the assets of the first-named company to the Refractories Company, without leaving with the selling company the purchase price of the assets so sold. In the case at bar the Refractories Company took over all the assets of the "Harbison & Walker Company, Southern Department," which was the original debtor, leaving it a mere shell, and without leaving with it any money or property whatever as a consideration for the sale of its assets. There was no liquidation of the "Harbison & Walker Company, Southern Department," by selling its assets and paying its debts; on the contrary, there was a transfer of all of its property to the Refractories Company without any attempt to pay appellee's debt. A subsidiary corporation can not thus escape the payment of its liabilities. It is true these sales and transfers were all made by deeds of conveyance, and that the corporation had the right to sell its assets in that way, if it chose so to do; but the decision of this case depends upon the broad equitable principle that where one corporation takes over the as-

sets of another corporation, without paying to it any consideration therefor, as is the fact in this case, the absorbing corporation takes the assets of the absorbed corporation *cum onere.*

This precise question was before this court in Camden Interstate Ry. Co. v. Lee, 27 Ky. L. R., 75, 84 S. W., 332. In that case Lee had obtained a judgment for personal injuries against the Ashland & Catlettsburg Street Ry. Co., which subsequently, by deed, conveyed all of its property and franchises to the Camden Interstate Ry. Co. In carrying out this sale, the stockholders of the Ashland & Catlettsburg Street Ry. Co. were paid in stock of the Camden Interstate Ry. Co., thus using practically the same method that was employed in the case at bar. Lee, having brought his suit against the Camden Interstate Ry. Co. and obtained a judgment against it as the absorbing company of his debtor, this court, in affirming the judgment, said:

"The sum of the transaction was that Camden either owned in his own right all the stock of the street railway company by way of purchase, or controlled it under contracts by which the stockholders agreed to take stock in the new company for the stock which they held in the old, and while he thus controlled all the stock in the street railway company, he caused that company to deed all of its property and franchises to the Camden Interstate Railway Co.; and thus the stockholders in the street railway company became stockholders in the interstate railway company. In this way the stockholders in the street railway company put all of their property and franchises in the hands of the Interstate Railway Company, and became stockholders in that company in lieu of the street railway company. By this means the interstate railway company swallowed up or absorbed the street railway company.

"While there was no stipulation in the deed that the new company should answer for the liabilities of the old, the law will not allow the stockholders in a corporation thus to change the name in which their property is held and defeat the claims of creditors. The rule is that where one corporation goes entirely out of existence by being merged into another, the liabilities of the old corporation are enforcible against the new one, just as if no change had been made. (Thompson on Corporations, section 372; 6 Am. & Eng. Ency. of Law, 818; 10 Cyc., 306, 314.)"

And, in answer to the argument that the contracts with the stockholders of the old company were all made in the name of Camden, and were carried out in his name and not in the name of the Camden Interstate Rÿ. Co., the court further said:

"The law will not look merely at the form of the transaction; it looks through the form to the substance of it. The sum of it here was that Camden controlling the stock of the old company, transferred its property to the new, and issued the stock in the new to take the place of that in the old company. This was not a purchase of the stock of the old company; it was simply an absorption of the old company into the new, and the new became answerable for all the liabilities of the old company which it absorbed, and will not be heard now to say that the assets of that company were worthless, or that the stock, which was selling at 50 or 60 cents on the $1, was of no value."

In Louisville & Nashville Railroad Co. v. Biddell, 112 Ky., 494, Biddell was injured while a passenger on the Kentucky Central Railway Company's train, on September 20th, 1891, and two days thereafter that corporation conveyed all of its property to the Louisville & Nashville Railroad Company. Biddell recovered a judgment against the Kentucky Central Railway Company; and, as in the case at bar, he filed a supplemental action against the Louisville & Nashville Railroad Co. to compel it to pay the judgment, after an execution against the Kentucky Central Railway Company had been returned "no property found." In upholding a judgment against the Louisville & Nashville Railroad Co., this court quoted with approval the following language from Thompson on Corporations, section 372:

"Where one corporation goes entirely out of existence, by being annexed to or merged into another corporation, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the surviving corporation will be entitled to all the property and answerable to all the liabilities of the other. The liabilities of the old company are enforceable against the new one in the same way as if no change had been made."

In Williams v. Commercial National Bank, 49 Oregon, 492, 11 L. R. A., n.s., 857, Williams had obtained a judgment against the Commercial National Bank; and the bank subsequently falling into financial difficulties, its

assets were taken over by Wells, Fargo & Co., for $250,000.00, and that corporation continued the business in the name of the Wells-Fargo Brank. In the trade, however, no money changed hands, the transaction being strictly a matter of entries in the books of the two corporations. Upon a creditor's bill having been brought against Wells, Fargo & Co. to require it to pay the judgment against the bank, the Oregon Supreme Court sustained the judgment of the circuit court granting the relief prayed, using the following language:

"The authorities seem to be uniform to the effect that the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets, or the proceeds thereof, into whosesoever hands they can trace them and subject them to such debts, except as against a bona fide purchaser for value. And, where a corporation transfers all its assets to another corporation with a view of going out of business, and nothing is left with which to pay its debts, such transferee is charged with notice by the very circumstances of the transaction, and takes the same *cum onere.* Such a case cannot be considered a sale in the due course of business, even though based on a valuable consideration, as it operates as a fraud against the creditors."

The same rule is announced in Chicago R. I. & P. R. Co. v. Howard, 7 Wall., 392, and in many other cases which are collected in the note to Ex Parte Savings Bank, 5 L. R. A., 520.

In 10 Cyc., 1267, under the heading "Selling Out to New Corporation," the rule is stated as follows:

"Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. This is a necessary extension of the doctrine that the assets of a corporation are a trust fund for its creditors. Such being the quality which equity annexes to them, when the corporation elects to go out of existence, to dispossess itself of them, and to transfer them to another corporation, equity follows the trust fund into the hands of the new taker, and charges the property in the hands of such taker with the debts of the transferrer. In other words, the corporation receiving the assets is charged in

equity, as a trustee in respect of such property, with the payment of the debts of the antecedent corporation."

It is apparent, therefore, that the case at bar comes clearly within the rule repeatedly announced as above shown, and that the circuit court did not err in holding the Refractories Company liable under the facts of this case.

4.   It is insisted, however, by the appellant, that the circuit judge erred in giving a personal judgment against the Refractories Company, when the prayer of the petition only asked that plaintiff be adjudged a lien upon all the property of the "Harbison & Walker Company, Southern Department," owned in Kentucky at the time of McFarland's death, and which is now owned by the Refractories Company.   The petition, however, prays "for all necessary orders, and for all proper relief."

Section 90 of the Code of Practice, reads as follows:

"The petition must state facts which constitute a cause of action in favor of the plaintiff against the defendant, and must demand the specific relief to which the plaintiff considers himself entitled; and may contain a general prayer for any other relief to which the plaintiff may appear to be entitled.   If no defense be made, the plaintiff cannot have judgement for any relief not specifically demanded; but, if defense be made, he may have judgment for other relief, under a prayer therefor."

In the case at bar defense was made, and under the prayer of the petition "for all necessary orders and for all proper relief," the court had the power to grant a personal judgment against the appellant, which was authorized by the evidence.

In Heckling v. Gehring's Exr., 30 Ky. L. R., 1198, 100 S. W., 824, we said:

"Under the Civil Code of Practice, section 90, upon issue joined in an action in equity, the court may grant any relief that the parties may show themselves entitled to, whether it is specifically prayed for or not, if the petition contain a prayer for general relief.   Bank v. Coke, 20 Ky. L. R., 291; Lillard v. Bannin, 91 Ky., 511; Bridgeford v. Barbour, 80 Ky., 529."

Furthermore, the appellee could not have been prejudiced by the personal judgment, since it received at least $200,000.00 of property belonging to the "Harbison & Walker Company, Southern Department," and has not

shown that it has paid any other debts of that corporation.

5.   Neither is there any merit in the contention that Prater was a necessary party to this action.   The court properly declined to permit him to file his petition to be made a party.   He had been employed by Mrs. McFarland to bring an action, and had subsequently been discharged.   He never recovered a judgment, and under his contract he had no lien upon the judgment finally recovered by other attorneys, and in a separate action. He did not prosecute the case to a final judgment, nor was anything ever recovered in the action that was instituted by him.   He, therefore, had no lien upon the recovery, which is the subject of this action.   Whatever claim he may have for a fee under a claim of *quantum meruit*, can be asserted against the administrator at the proper time.   Henry v. Vance, 111 Ky., 81; Goodin v. Hays, 28 Ky. L. R., 112, 88 S. W., 1101; Rowe's Exr. v. Fogel, 88 Ky., 106.

6.   Finally, it is contended that Turley should have been permitted to file his intervening petition, and that it was reversible error to refuse him.   Turley's petition set up the fact that he had bought, and was then the owner of Mrs. McFarland's interest in the judgment. That assignment, however, gave him no lien upon the recovery, as against the administrator.   The exclusive right to maintain this action was vested in the personal representative.   This question was fully considered, and may be treated as settled in this jurisdiction, by the decision in City of Louisville v. Hart's Admr., 143 Ky., 172, and the cases there cited.

Section 29 of the Code of Practice does not sustain Turley's claim that he is a proper party to this action. That section applies to a claimant who asserts a right or interest in attached property, and not to the claimant of the judgment, or the claim of the attaching creditor.

The recovery, therefore, belonged wholly to the personal representative, who was entitled under the law to collect all of it.   Turley stands in no better position than Mrs. McFarland, and clearly she would have been entitled only to her share of what remained in the hands of the administrator after the payment of debts and expenses of the recovery.   New Bell Jellico Coal Co. v. Stewart's Admx., 155 Ky., 415.   Turley having no lien, the court properly declined to allow him to intervene in this action.

Judgment affirmed.   Judge Hannah not sitting.