## Leftwich et al. v. Louisville & Nashville R. Company.

(Decided February 9, 1932.)

ROSS & ROSS and S. H. SUTHERLAND for appellants.

BURNAM & GREENLEAF and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—Affirming.

On Sunday, February 10, 1929, Arlie W. Leftwich and Miss Norma Chamberlin, students at Berea College, were run over and killed by one of the appellee's trains while they were taking a Sunday afternoon stroll on appellee's right of way near the city limits of Berea. Thereafter W. D. Jackson of Barbourville, Ky., an uncle of Miss Chamberlin, who, prior to her death, resided in that town, qualified as her administrator. He employed Mr. J. B. Campbell of Barbourville to represent him in his claim for damages as such administrator against the appellee on account of the death of Miss Chamberlin. Leftwich at the time of his death was a resident of Virginia, and Mr. Campbell undertook to get in touch with the relatives of Leftwich in an effort to ascertain

whether they had any evidence or knew of any witnesses who would be helpful to him in the prosecution of the Chamberlin claim. Leftwich left an uncle, Mr. S. H. Sutherland, an attorney of the Virginia bar, who, for Leftwich's family, took up with Mr. Campbell the matter of the employment of Mr. Campbell to represent the Leftwich estate in its claim for damages against the railroad. The upshot of these negotiations was that a domiciliary administrator was appointed in Virginia for the Leftwich estate, and then by agreement Mr. Jackson was appointed ancillary administrator in Kentucky for the purpose of bringing suit against the appellee. Mr. Campbell and Mr. Sutherland were retained to bring that suit. In February, 1930, suits were filed in the Madison circuit court in the Chamberlin and the Leftwich cases. Beginning early in the spring of 1930, Mr. Campbell entered into a lengthy correspondence with Mr. Sutherland, in which he was continually urging Mr. Sutherland to agree to a compromise of the Leftwich case. Campbell at that time had been offered by the railroad company $250 in each of the two cases. He informed Mr. Sutherland that, in order to recover in these cases, it would be necessary to show that the place where Leftwich and Miss Chamberlin were killed had been so used by the public, as that the railroad was under the duty to anticipate their presence at the time they were killed, and that this was a difficult proposition to establish, and that their witnesses were scattered far and wide so that it would be very expensive to get them to court and it would be very expensive for him and Mr. Sutherland to go from their respective homes to the Madison circuit court for the preliminary hearings and the trial of this case. He further stated that he thought the offer of the railroad could be raised somewhat. Throughout the correspondence, Mr. Sutherland took the position that no offer of compromise under $5,000 would be even considered. In the fall of the year, Jackson, as administrator, wrote a letter to Sutherland informing him that the railroad had offered $500 in each of the two cases, but would not settle one without the other, and he stated that he was not only willing to, but very desirous of settling the Chamberlin case for that amount, and insisted that the Leftwich case be also settled. Again did Sutherland decline in his reply to Jackson the proposed compromise. In the latter part of January, Sutherland received a letter from Campbell informing him that the two cases had been compromised

by Jackson for $500 each. The cases had been set for trial on February 2, 1931, and Sutherland came on to Richmond to appear for the trials. When he arrived on the morning that the February term of the Madison circuit court opened, he was confronted by a tendered order dismissing the Leftwich case settled in accordance with the compromise theretofore effected between the appellee and Leftwich's ancillary administrator. Sutherland objected to the entry of this order, and the case was passed over for a few days during which time Sutherland filed his affidavit and the correspondence which passed between him and Campbell. When the motion to file the order of compromise came on for final hearing on the objection of Sutherland and the father of the deceased Leftwich, he being the sole heir-at-law of Arlie Leftwich, to its filing, the court overruled the objection and entered the order dismissing the case as settled, and from that judgment this appeal is prosecuted.

It is insisted that the settlement was void or at least voidable because procured by fraud. There is not the slightest evidence in this record of any fraud practiced by the appellee in the procurement of this settlement, unless it be, as appellant urges, that the amount paid in settlement of this case was so disproportionate to the damages which the estate sustained by reason of the death of Leftwich as that it amounts to a badge of fraud. To support this proposition, the appellant cites the case of Leach v. Owensboro City Railway Co., 137 Ky. 292, 125 S. W. 708. But in that case not only was the amount paid in settlement very small but it was also shown that the attorney for the railroad company actively participated in and procured the administrator to make the improvident settlement he did. In the instant case, there is no showing whatever that the appellee or its counsel did anything improper or made any false representations or fraudulent efforts in the procurement of this settlement. True it is that the amount was small, and true it is that if appellant could have established that the place where Leftwich was killed had been so used by the public as to throw upon the appellee the duty of anticipating his presence there, and that it negligently failed to do so and negligently ran over Leftwich, substantial damages might have been recovered. But all of these conditions of fact were in sharp issue. The railroad contends it only paid the sum it did to avoid the expense of the trials. We thus see that we have here a

case of a bona fide dispute; the appellant asserting in good faith liability, and the appellee in equally good faith denying it. There was, so far as this record shows, no fraud of any kind practiced by appellee upon the appellant. The lack of unanimity between the domiciliary administrator of Leftwich and the beneficiaries of his estate on the one hand and the ancillary administrator on the other concerning the advisability of a settlement was not, so far as this record discloses, even known to the appellee. It entered into the settlement here objected to in good faith and there is no show of fraud, error, or mistake warranting its being set aside. The court therefore did not err in entering the order of dismissal which carried the compromise agreement into effect. Thompson v. Sawyer, 14 S. W. 909, 12 Ky. Law Rep. 620; Costen v. Price, 110 S. W. 390, 33 Ky. Law Rep. 553; Judson v. Bowser, 91 S. W. 727, 28 Ky. Law Rep. 1288. The judgment is affirmed.