## Louisville & N. R. Co. v. Turner et al.

## Turner's Adm'x v. Louisville & N. R. Co.

May 12, 1942.

H. T. Lively, H. L. Bryant, J. C. Baker and J. L. Williams for appellant.

Forester, Shehan & Bell and Charles B. Spicer for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

Hiram Turner was released from jail in the morning of February 9, 1940, and was killed that afternoon by a train while walking in the railroad yards at Evarts. The next day at the undertaking establishment in Harlan, where his body lay, Rebecca Turner, his purported widow, agreed with an agent of the railroad company to accept $200 in satisfaction of any claim that might be raised on account of his death, saying, according to the

evidence, that all she wanted was for her husband to be put away nicely. While the claim agent was preparing the release and check, the widow went to the court house and was appointed and qualified as administratrix of the estate. In such capacity she signed the release and accepted the company's check. She endorsed it and the money was obtained, the undertaker receiving $150 and the widow $41.50. We presume the balance was used to pay the cost of administration. That same afternoon a settlement of the estate was prepared for the administratrix by someone showing the receipt and disbursement of the $200. It was then filed and in due course confirmed.

Six days after the settlement the purported widow, as administratrix, filed suit against the railroad company for $25,000 damages for Turner's death. The company answered denying its negligence, pleading contributory negligence and the settlement in bar of the action. At the ensuing term of court, Pearl Turner, a brother and two sisters offered a pleading styled, "Petition to be made party, answer and cross petition and reply." Over objection it was ordered filed and they were made parties to the action. This pleading alleged that Rebecca Turner was not the decedent's widow and that the petitioners were his only legitimate children and heirs at law and were necessary parties to the action. It pleaded negligence of the company as a cause of his death and denied that there had been a settlement of the claim. It alleged in substance that the company knew that Rebecca Turner was not the widow of the deceased and not entitled to be appointed administratrix of his estate, although it is admitted that she claimed to be and had so represented herself to the county court. It was further charged that the company and Rebecca had wrongfully and fraudulently entered into an agreement to settle the claim for damages in order to cheat and defraud the intervenors, the only heirs and beneficiaries of the right to recover damages, and that the railroad company had caused Rebecca to represent herself as the deceased's widow and qualify as administratrix for the purpose of carrying out the fraudulent scheme. The company's general and special demurrers and a motion to strike were overruled. Its answer formed an issue on the foregoing allegations and pleaded that the administratrix had the exclusive power and authority to sue and the intervenors were without legal capacity to do so.

Rebecca Turner, as administratrix and plaintiff, joined issue with the intervenors also, and elaborately pleaded an avoidance of the settlement set up in the company's answer. But at no time and in no manner did she offer to return the $200 which she admitted having received.

The court gave a peremptory instruction to the jury to return a verdict for the railroad company against the action of Rebecca Turner as administratrix, but submitted the case of the intervenors on the issues of negligence, contributory negligence and fraud in the settlement. The verdict was for $1,000, less $200, for the intervenors. The railroad company prosecutes an appeal from that judgment and one has been filed in behalf of the administratrix against the railroad company.

It was developed on the trial that Rebecca Turner was the wife of Ben Turner, a son of deceased; that they had been separated for sometime but never divorced; that she had lived with her father-in-law for several years before December, 1927, when they procured a license and had a preacher perform a marriage ceremony. The marriage was void because bigamous and incestuous. Section 2096, Kentucky Statutes. Rebecca testified concerning the deceased:

> "He had about five living children, but my other two belongs to him, too; he just only had five of them, but I have got two more of him; they were born before we was married."

Mrs. Turner's appointment as administratrix was voidable, but until revoked her acts were valid, and her compromise and settlement of the claim for damages was binding unless set aside upon legal grounds. McFarland's Adm'r v. Louisville & N. R. Co., 130 Ky. 172, 113 S. W. 82. It is enough to affirm the judgment against the administratrix upon the ground that there was never any offer to return the $200 paid her. It has been often held that before one may maintain an action after having received money in compromise and settlement of the claim upon which it rests, he must return or tender the return of the sum received, it being timely to do so when a reply in response to the defendant's plea of a settlement in bar is filed. Toppass v. Perkins' Administratrix, 268 Ky. 186, 104 S. W. (2d) 423; Baker's Administratrix v. Louisville & N. Railroad Company, 287 Ky. 13, 152 S. W. (2d) 276.

Section 6 of the Statutes authorizes a suit for damages for the tortious death of a person to be prosecuted by his personal representative. The right is exclusive and no one other than a personal representative has the legal capacity to maintain such an action and a settlement made by a personal representative is binding upon the beneficiaries. City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S. W. 212, 35 L. R. A., N. S., 207; Harbison-Walker Refractories Co. v. McFarland's Adm'r, 156 Ky. 44, 160 S. W. 798. The beneficiaries of the action are not proper parties. Thomas' Adm'r v. Maysville Gas Co., 112 Ky. 569, 66 S. W. 398. We have recognized, however, two exceptions or rather qualifications, based upon principles of justice. One is where the personal representative has refused to bring an action the beneficiaries may do so in their own names. McLemore v. Sebree Coal & Mining Co., 121 Ky. 53, 88 S. W. 1062, 28 Ky. Law Rep. 25; Harris v. Rex Coal Co., 177 Ky. 630, 197 S. W. 1075. The other qualification is that where there was fraud and collusion on the part of the personal representative and the person sought to be made liable for the death. Leach v. Owensboro City Ry. Co., 137 Ky. 292, 125 S. W. 708; New Bell Jellico Coal Company v. Stewart's Adm'r'x, 155 Ky. 415, 159 S. W. 962.

We think it was proper to permit the children of the deceased as beneficiaries of the right of action to intervene in the case because their pleading is sufficient to charge fraud and collusion. The evidence, however, does not indicate any purpose on the part of either the administratrix or the railroad company's claim agent to defraud the deceased's children of any rights they might have had. Pearl Turner (who had been in both the asylum and penitentiary) testified, and is partially supported by two witnesses, that he told the agent at the court house while Rebecca was being qualified as administratrix that "she weren't lawful and he settled with the wrong party," and that he was the "lawful one." But the evidence of Rebecca Turner and of disinterested witnesses, as well as of Reams, the railroad agent, proves that the claim agent was not in the court house at that time, and the denial that Pearl ever made such a statement to him is supported by the fact that he participated in the transaction and witnessed the signature of Rebecca to the agreement and release. Reams testified Pearl said something to that effect in the court house in April, two months after the suit was filed. As will be

developed later, C. B. Cawood, the proprietor of the Harlan Hardware Company, which conducted the funeral parlor, had her to qualify as administratrix and signed. her bond and testified the settlement was not unfairly entered into. There was no collusion as is described in the Leach and Stewart cases above cited and relied upon by the appellees.

However, the circumstances of the settlement of a death claim for $200 with one claiming to be a widow of a man who had been killed less than 24 hours before and while his mutilated body was at the place of settlement, together with the haste of her qualification and settlement as administratrix—all being practically simultaneous—with no opportunity whatever of the deceased's children, other than Pearl Turner, to raise any question of qualification, constitutes a badge of fraud requiring explanation and justification. Leach v. Owensboro City Ry. Co., supra, As said in Bramble v. Cincinnati, F. & S. E. R. Co., 132 Ky. 547, 116 S. W. 742, 745: "These day after the accident settlements * * * are not looked upon with favor by the courts." Cf. Toppass v. Perkins' Adm'r'x, supra.

Reams, the railroad claim agent, testified that he was informed Turner's widow would meet him at the undertaking establishment that morning. It was developed that before he saw her a settlement had been discussed between him and Ben Middleton, a friend of the family, who was then jailer of Harlan County. From his knowledge of the accident he believed there was no liability on the part of the company, but stated to Middleton that it would pay the funeral bill and possibly a little more, suggesting $200 as the amount. According to Cawood, Middleton responded, "It was a bad case and that he would rather pay the funeral bill himself than for it to be paid that way." Reams prepared to leave the conference with Middleton and Cawood. After a while Middleton asked him if he would go and see the widow, who, it seems, was then upstairs and he said "No," that he (Middleton) could go see her. Cawood testified Mrs. Turner and Middleton talked over the matter in his presence before Reams talked with her. Middleton testified he had talked with Mrs. Turner and the son, Pearl, about burying Hiram and they all agreed he should be put away nicely. She stated she wanted a little extra money to go to West Virginia on. We think it clear that Mid-

dleton was acting as a go-between and advisor. He testified that in the beginning he told the widow and the son that they should not sign any contract but when he found they didn't have anything with which to pay the funeral expenses and wanted him buried nicely, it appears he advised a settlement, although in his testimony he sought to avoid any responsibility for it. However, he is positive that he told Mrs. Turner that what she was signing would be final. She testified nothing was ever said by Reams about any settlement but only that he was giving her $200 with which to bury her husband, adding that she did not have to spend it all for that purpose, and could use some of it to buy some clothes for herself and children. Pearl was present, she stated, but never said anything except that he asked her to let him pick out his father's burial clothes. She testified she could not read the release and that it was not read over to her. Had she known it was a final settlement she never would have signed it. When she did sign it her married daughter and Pearl were present, and it is otherwise shown. Cawood and Middleton were there; perhaps also Mrs. Mary Middleton, a sister of the deceased. Neither the daughter nor Mrs. Middleton testified. Pearl testified he did not know what he was signing when he witnessed the release, but was told that he was just witnessing a check and that "there was nothing to it." Reams testified that Mrs. Turner took the release and seemed to be reading it carefully. He asked if she understood that she was making a full and complete settlement and she said she did. Cawood who also signed the release as a witness, related some of the negotiations for a settlement as above described and testified that the release was read aloud to Mrs. Turner and she and Pearl were told "That was in full settlement for the claims of the death of Hiram Turner."

Reams testified the $200 was paid because, as is often the case, the family of a man killed on the railroad tracks is not able to pay his funeral expenses and the company does so in order to avoid litigation. An engagement in Pineville that afternoon was his reason for making a quick settlement. He had no knowledge that Rebecca Turner was not the lawful widow and without right to qualify as the administratrix.

It can be readily understood that in a case like this a railroad company though denying liability, and justifi-

ably so, would settle a claim of this kind as a charity as well as to avoid litigation. But such a speedy settlement for so small a sum certainly calls for a clear explanation and display of fairness. In this case the purported widow, who evidently was acting in good faith, had with her not only a son of the deceased and her daughter by him, but she was being advised by two friends who are substantial men of affairs. All the testimony except her own and of Pearl (who was discredited) is to the effect that she understood that she was making a final and complete settlement and was entirely satisfied. Compared with the overwhelming evidence to this effect, her testimony is not considered of sufficient probative value to have authorized a submission of the question to the jury. We are of opinion, therefore, that upon this ground of fraud not being proved, the court should have directed a verdict for the defendant in the action of the intervening parties. See Leftwich v. Louisville & N. R. Co., 242 Ky. 353, 46 S. W. (2d) 483; Louisville & N. R. Co. v. Foust, 274 Ky. 435, 118 S. W. (2d) 771.

The judgment on the appeal of Turner's administratrix against the L. & N. Railroad Company is affirmed. That on the appeal of the L. & N. Railroad Company v. Grant Turner et al. is reversed.