RENDERED: OCTOBER 26, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2022-SC-0177-DG

MR. ROOF OF LOUISVILLE, LLC                            APPELLANT

|  | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2020-CA-1048 |
|  | JEFFERSON CIRCUIT COURT NO. 15-CI-002902 |

THE ESTATE OF AYANNA HENRY,                      APPELLEES
DECEASED (SUCCESSOR
ADMINISTRATOR NOT YET APPOINTED);
AMERICAN WATER HEATER COMPANY;
AND THE ESTATE OF LENA BAILEY,
DECEASED (SUCCESSOR
ADMINISTRATOR NOT YET APPOINTED)

### AND

### 2022-SC-0178-DG

AMERICAN WATER HEATER COMPANY                 APPELLANT

|  | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2020-CA-1048 |
|  | JEFFERSON CIRCUIT COURT NO. 15-CI-002902 |

THE ESTATE OF AYANNA HENRY,                      APPELLEES
DECEASED (SUCCESSOR
ADMINISTRATOR NOT YET APPOINTED);
MR. ROOF OF LOUISVILLE, LLC; AND THE
ESTATE OF LENA BAILEY, DECEASED
(SUCCESSOR ADMINISTRATOR NOT YET
APPOINTED)

## OPINION OF THE COURT BY CHIEF JUSTICE VANMETER

## REVERSING AND REMANDING

By statute, when a party, whether plaintiff or defendant, to an action dies, an application to revive the action in the name of the representative or successor of that party must be made within one year after death. KRS[1] 395.278. In this case, we are required to decide whether the Court of Appeals erred in holding that KRS 395.280, providing for the substitution of a successor administrator, was not subject to the one-year limitation of KRS 395.278. We hold that the Court of Appeals did err and therefore reverse its opinion reversing the Jefferson Circuit Court's judgment which dismissed the civil actions of the Estate of Ayanna Henry and the Estate of Lena Bailey against American Water Heater Company ("AWH") and Mr. Roof of Louisville, LLC ("Mr. Roof"). Thus, the Jefferson Circuit Court's summary judgment is reinstated.

## I. FACTS AND PROCEDURAL BACKGROUND

On June 18, 2014, eleven-year-old Ayanna Henry (Ayanna) was found cold and unresponsive in the basement of her family home. When first responders arrived, they pronounced her dead at the scene. Her mother, Shanita Bailey (Shanita), her grandmother, Lena Bailey (Lena), and her younger sister, Aniya Henry (Aniya),[2] each reported headaches and flu-like symptoms and were transported to a local hospital to be evaluated. Due to these symptoms, the first responders tested the home for elevated levels of

---

[1] Kentucky Revised Statutes.

[2] We refer to these persons by their first names merely to avoid confusion because of their surnames.

2

carbon monoxide. The tests were positive for excessive levels of carbon monoxide.

Several days earlier, Brian Cochran, the biological grandfather of the deceased child and the owner of the family home where the death occurred, had installed a "BFG Conversion Kit," given to him from a local hardware store as part of a recall on his water heater. Cochran installed the conversion kit himself with the assistance of a family friend. AWH manufactured the water heater and conversion kit.

Two days before the death of Ayanna, Mr. Roof replaced the roof of the house via a subcontractor. At some point during the conversion kit installation and the roof replacement, the ventilation for the water heater system was apparently disrupted and not repaired.

On June 11, 2015, Shanita was appointed as administratrix of the Estate of Ayanna. On the same day, Lena, the grandmother, individually; Shanita, the mother, individually; and Shanita, in her capacity as next friend of her minor child, Aniya, each filed a personal injury action against multiple defendants, including AWH and Mr. Roof. Shanita, in her capacity as administratrix of the Estate of Ayanna, also filed a wrongful death action against the same defendants.[3] The claims alleged that the negligence of AWH and Mr. Roof, amongst that of the other defendants, caused both Ayanna's death and the personal injury to each of Lena, Shanita, and Aniya. The record

---

[3] The four causes of action were all set forth in one complaint.

3

discloses that the complaint was served by mail on Antwain Henry, the girls'

father, who was then incarcerated.

Lena passed away on June 24, 2015, mere days after the complaint was

filed, and thus her action was abated. In November 2015, Shanita was

appointed as the administratrix of the Estate of Lena Bailey.[4] A few days later,

Shanita, as administratrix of her mother's Estate, moved to be substituted as

plaintiff in the action in lieu of Lena.[5] The trial court entered an Order

granting the motion for substitution on November 16, 2015, thereby effectively

and timely reviving Lena's action under KRS 395.278 and CR[6] 25.01(1).[7]

---

[4] The CourtNet records for these estates reveal that the Jefferson Public Administrator had brief involvement in the estates' administration. With respect to the Estate of Ayanna, the record appears to show that Chris Meinhart, the then serving Jefferson Public Administrator, was appointed as administrator for this Estate on July 23, 2015, but the Order of Appointment was rescinded and Shanita was appointed in January 2016. *Estate of Ayanna Henry*, Jefferson Dist. Ct., 15-P-002281. Similarly, in the Estate of Lena Bailey, the record appears to show Meinhart was appointed on February 5, 2018. This was eighteen months after Shanita's death. Meinhart's appointment was set aside later in 2018, apparently so that Cochran could be appointed. *Estate of Lena Bailey*, Jefferson Dist. Ct., 15-P-004696.

The reason for setting aside these appointments of the Jefferson Public Administrator is not disclosed in the record.

[5] Shanita's stated grounds in the motion was that substitution was appropriate since "[p]ursuant to [CR] 17.01, as the personal representative for the Estate of Lena Bailey, Shanita Bailey as administratrix thereof, is the real party in interest." (Emphasis added). This characterization is contrary to the Appellees' argued position before us. The Appellees, for purposes of this opinion, are the Estate of Ayanna Henry and the Estate of Lena Bailey.

[6] Kentucky Rules of Civil Procedure.

[7] The record discloses that in March 2016, Plaintiffs filed a motion for leave to amend the complaint to remove Lena Bailey as a plaintiff due to her death and "properly name the probate [sic] estate of Lena Bailey, Shanita Bailey, Executrix [sic]," referring to the November 16, 2015, Order of Substitution. Since substitution and revival had already occurred, the purpose of this motion is unknown; the trial court treated the motion as one to file an amended complaint and the defendants correspondingly filed answers.

4

However, on August 5, 2016, a few months after the successful revival of Lena's action, Shanita passed away and her individual action abated.

Following the death of Shanita, over two years passed before Cochran, Shanita's father as well as Lena's life partner, was appointed by the Jefferson District Court as the administrator *de bonis non* of each estate on December 5, 2018. No effort, however, was made to notify the defendants, their counsel or the trial court of Shanita's death. In fact, plaintiffs' counsel continued to practice the case as if Shanita were still alive, effectively misrepresenting that fact with each pleading filed in the trial court for over two and one-half years.[8]

---

[8] While Appellees' counsel attempt to pass off this discrepancy as due to the "lengthy process" of attempting to discern who in the family should take up the mantle as administrator, this failure has greater implications. "An attorney acts as an agent of his client." *Spees v. Ky. Legal Aid*, 274 S.W.3d 447, 448 (Ky. 2009) (citing *Clark v. Burden*, 917 S.W.2d 574, 575 (Ky. 1996)). Under KRS 395.195,

> A personal representative, acting reasonably for the benefit of the interested persons, may properly:
>
> . . .
>
> (18) Employ persons, including attorneys, auditors, investment advisors, or agents, to advise or assist the personal representative in the performance of his administrative duties[,]
>
> (19) Prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties[.]

As an elementary matter of agency law, the death of the principal terminates the agency and the agent's power to act. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 591 (Ky. 2012) (citing *Rice v. Floyd*, 768 S.W.2d 57 (Ky. 1989); Restatement (Second) of Agency, § 120, 122 (1958)). This rule has been applied to the attorney-client relationship. *See Harris v. Jackson*, 192 S.W.3d 297, 306 (Ky. 2006) (noting death of client left attorney without client to represent) (citing ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 95-397 (1995)). These rules are of longstanding duration, having been applied early in our Commonwealth's history to the agency created by an attorney-client relationship. *See Campbell's Representatives v. Kincaid*, 19 Ky. (3 T.B. Monr.) 68, 71 (1825) (holding that "under settled principles of law," attorney's agreement with client to prosecute a lawsuit ceased with client's death); *Clark's Ex'rs v. Parish's Ex'rs*, 4 Ky. (1 Bibb) 547, 547 (1809) (holding "death of a party to an action pending vacates the power of his

5

Only when the trial court issued a CR 77.02(2) Notice to Dismiss, March 14, 2019, did Plaintiffs' place in the record that Shanita had died. And this pleading, entitled "Response to Court's CR 77.02 Notice" was arguably misleading by leaving the impression that Shanita had only recently died, in stating,

> Comes the Plaintiffs, by and through counsel, and in response to the Court's notice, states as follows:
>
> Plaintiff is pursuing this matter, and discovery is ongoing. *Due to the passing of Plaintiff Shanita Bailey on December 5, 2018,* Plaintiff Brian Cochran, was appointed administrator of the estates of Shanita Bailey, Lena Bailey and Ayanna Henry.

(emphasis added).

Mr. Roof and AWH, following a February 2020 motion hour at which they were indisputably made aware of the death of Shanita, each filed motions to dismiss the claims of Shanita 1) individually; 2) as administratrix of Ayanna's Estate; and 3) as administratrix of the Lena's Estate. The basis for the motions

---

attorney therein, and [attorney] is not required or authorized to do anything further in the action, except upon the retainer of the legal representative[]").

Within the context of estate administration, "[w]hen the powers of one personal representative cease, the remaining personal representatives may carry the trust into execution. If there is no remaining personal representative, an administrator de bonis non, or, if there is a will, an administrator with the will annexed, shall be appointed." KRS 395.060. In other words, when a personal representative dies, as in this case, her powers cease, and the appointment of an administrator *de bonis non* is required.

Failure to notify opposing counsel of the death of the party represented by the attorney is similarly a violation of Rules of Professional Conduct. *Harris,*192 S.W.3d at 305-06; *Ky. Bar Ass'n v. Geisler*, 938 S.W.2d 578, 580 (Ky.1997) (holding attorney had obligation to disclose death of identified client and that when death occurs, the attorney ceases to represent the identified client); *see* CR 25.01(1) (requiring "[u]pon becoming aware of a party's death, the attorney(s) of record for that party, as soon as practicable, shall file a notice of such death on the record and serve a copy of such notice in the same manner provided herein for service of the motion for substitution[]").

was the failure to timely substitute a personal representative. KRS 395.278; CR 25.01. The Plaintiffs responded that the delay was occasioned "by the task of determining who would take over as administrator of each of the three decedents' estates. It was eventually discovered that the father of Ayanna and Aniya Henry was incarcerated."[9] And, they argued revival, as required by KRS 395.278, was not implicated. Rather, the matter only required substitution of a personal representative under KRS 395.280, which contains no time limit. On June 14, 2020, Cochran filed a motion to be substituted as party plaintiff. Without addressing the motion to substitute, the trial court granted Mr. Roof's and AWH's motions to dismiss concluding that the statutory time limitation on revival applied.

Upon appeal, the Court of Appeals determined that the trial court erred in concluding that the Estates failed to timely substitute a new personal representative following the death of the original personal representative. The Court of Appeals interpreted KRS 395.280 to provide a summary procedure by which an estate's personal representative may be replaced upon his or her death or removal. Death or removal of the appointed representative does not cause the estate's action to abate; it merely requires a new substitution with yet another representative. *Est. of Henry v. Am. Water Heater Co.*, No. 2020-

---

[9] The Appellees cite this reason to us as well. Unfortunately, this fact, "eventual discovery of incarceration," is belied by the certificate of service on the June 2015 Complaint disclosing that the girls' father was then incarcerated.

CA-1048-MR, 2022 WL 1051907, at *3 (Ky. App. Apr. 8, 2022). We granted Mr. Roof's and AWH's petitions for discretionary review.[10]

## II. STANDARD OF REVIEW

As this matter involves questions of pure statutory interpretation, the meaning, impact, and interrelation of KRS 395.280 and KRS 395.278, we review the lower court's decision de novo. *Hauber v. Hauber*, 600 S.W.3d 204, 207 (Ky. 2020) (citing *Commonwealth v. Moore*, 545 S.W.3d 848, 850 (Ky. 2018)). In conducting our review, we afford no deference to the lower courts' statutory interpretations or conclusions of law. *Hauber*, 600 S.W.3d at 207 (citing *Seeger v. Lanham*, 542 S.W.3d 286, 290 (Ky. 2018)).

Our goal in statutory interpretation is to carry out the intent of the legislature. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012); *Saxton v. Commonwealth*, 315 S.W.3d 293, 300 (Ky. 2010) (discerning and effectuating legislative intent is the cardinal rule of statutory construction); *see also* KRS 446.080(1) ("[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature"). In addition, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984). Statutory terms are interpreted "based upon their common and ordinary meaning, unless

---

[10] The Court of Appeals noted that Shanita's individual claim was properly dismissed since no notice of substitution had been filed within a year of her death on August 5, 2016. KRS 395.278; CR 25.01. No argument exists that this dismissal was improper, and this claim is not before us.

8

they are technical terms." *Maupin v. Tankersley*, 540 S.W.3d 357, 359 (Ky. 2018).

### III.    ANALYSIS

Most importantly for a proper analysis and resolution of this case is recognition that we are confronted with two separate claims, filed by separate persons, in separate capacities, albeit arising from a common event, and initially encompassed within a single complaint. One is the personal injury claim filed by Lena, and the other is the wrongful death claim filed by Shanita as administratrix of Ayanna's estate. For a very short time, following Lena's death and Shanita's appointment as administratrix of Lena's estate and subsequent substitution as party plaintiff in place of Lena, both claims were prosecuted by Shanita in a fiduciary capacity, but the differing nature of the claims is important because of statutory provisions that operate on them.

### A.    *Origin and Meaning of KRS 395.280*

Because the Court of Appeals agreed with the Appellees' argument that KRS 395.280 merely "provides a summary procedure by which an estate's personal representative may be replaced upon her death or removal[,]" and is not subject to the time limitation in KRS 395.278, examination of the origins and meaning of KRS 395.280 is appropriate.

*1. Survival of Actions Generally.*

Recently, we addressed the relationship between KRS 395.278 and CR 25.01, including the history of those provisions. *Estate of Benton v. Currin*, 615 S.W.3d 34, 36-39 (Ky. 2021). The main point of the *Currin* opinion was to

9

clarify the procedure for substitution, and that "a motion for substitution properly filed with the court in accordance with CR 25.01(1) within the one-year allotted by the legislature constitutes revival." *Id.* at 39.

Our *Currin* opinion briefly touched on survival of actions. We noted that at common law, when a plaintiff passed away while prosecuting a case, the case died with him. *Id.* at 36 (citing *Daniel v. Fourth & Market, Inc.,* 445 S.W.2d 699 (Ky. 1968)). In order to ameliorate the harsh effects of the common law, the legislature, early in our Commonwealth's history, provided for the survival and revival of actions. *See* 1 CHARLES S. MOREHEAD & MASON BROWN, DIGEST OF THE STATUTE LAWS OF KENTUCKY, *Abatement & Revivor*, 85-90 (1834). Noteworthy in this collection is a statute from 1812:

> [N]o species of action for personal injuries, shall cease or die with the person, except actions for assaults and batteries, slander, criminal conversation, and so much of the action for malicious prosecution, as is intended to recover for the personal injury; but that for any other injury than those herein excepted, an action may be brought and maintained by executors and administrators . . . in like manner with causes of action founded upon contract. And upon the decease of either plaintiff or defendant to any actions which, by the provisions of this section, will not die with the person, it shall be lawful for such action to be revived in the name of the executors or administrators of the deceased, in the same manner, subject to the like proceedings, as in the cases which heretofore survived to the executors or administrators of the deceased, may be.

Act of Feb. 4, 1812, 4 Litt. 394; 1 MOREHEAD & BROWN, at 88. If this statute

seems familiar, it should because a direct line of statutory codification[11] runs

from it to our present KRS 411.140:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

The 1812 survival statute is important for two reasons: 1) it demonstrates that

many of our current statutes have long pedigrees, and 2) like the other early

abatement/revivor/survival of action statutes, it was silent as to survival of an

action when brought by an executor or administrator.

*2. Predecessor of KRS 395.280*

In 1838, our predecessor court was confronted with that very issue:

whether an action previously brought by an administrator of a decedent's

estate survived the administrator's death and thus could be revived by his

successor. *Fletcher's Adm'r v. Sanders*, 37 Ky. (7 Dana) 345 (1838). The court

made short work of the issue, stating that "[w]hatever might be the technical

rule in an action at law, we have no doubt that, in equity, a suit brought by an

administrator, may be revived and prosecuted by an administrator, *de bonis*

---

[11] Ky. Stat. § 10 (1894); Gen. Stat. ch. 10, § 1 (Ky. 1873); Rev. Stat. ch. 10, § 1 (Ky. 1852).

*non,* after the administrator's death." *Id.* at 347. A little over three years later, the legislature enacted the following statute:

> [I]n all cases where any suit may now be depending, or shall hereafter be depending, at law or in equity, in any of the courts of this Commonwealth, brought by or against an executor or any administrator whatever, and the plaintiff or defendant shall die, or be removed from office by the court in which he qualified or received his appointment, or his office shall expire, the suit shall not, for either of said causes, abate, or be discontinued, but the same may be revived and prosecuted in the name of, or against the successor, or person who shall accede to the duties, of such plaintiff or defendant who may have died, been removed from office, or whose office has expired, in the same manner as if such successor, or the person acceding to the duties, had originally been a party to such suit, any law or usage to the contrary notwithstanding.

Act of Feb. 23, 1842, ch. 269, § 1, 1842 Ky. Acts 63. Section 2 of this Act provided the means by which the revival was to be made. The 1842 Act was clearly enacted for the express purpose of clarifying that any action, whether at law or in equity, brought by or against a personal representative did not abate and was subject to revival by or against a successor.

In 1852, following the adoption of Kentucky's Third Constitution, the legislature undertook a wholesale revision of the statutes. Included in this effort were provisions related to executors and administrators. The provisions of the 1842 Act were simplified, as follows:

> When any personal representative shall commence a suit or action, or shall be sued, and shall die, be removed, or superseded by another, before the termination of the suit or action, his successor may, by order of court, be substituted in the place or stead of the original plaintiff or defendant, the opposite party being notified of such order.

12

Rev. Stat. ch. 37, Art. 1, § 15 (Ky. 1852).[12]  This compares with the virtually identical language in KRS 395.280: "[w]hen any personal representative commences an action or is sued, and then dies, is removed, or is superseded by another before the termination of the action, his successor may, by order of court, be substituted for the original plaintiff or defendant."

While we no longer worry so much about actions at law/equity, that is the origin of KRS 395.280 and clarifies its purpose: an action brought by or against a personal representative who then dies does not abate with that death but may be revived by the substitution of his/her successor.  That purpose, survival of the action, however, addresses an issue separate from the timing within which the substitution/revival must occur.  In 1851, the legislature moved all the revival provisions[13] to the old Civil Code, including the one-year limitation on revival of cases involving a personal representative, and the predecessor statute to KRS 395.280 was then retained in the old Revised Statutes (Ky. 1852).  And this is where they remained until the adoption of the present Civil Rules in the early 1950s and the moving of substantive provisions of revival to Kentucky Revised Statutes.

3. *CR 25.01 framework.*

With this clear understanding of the meaning and purpose of KRS 395.280, fitting these three statutes, KRS 395.278, 395.280 and 411.140, into

---

[12] The same language was included in the 1873 statutory revision, Gen. Stat. ch. 39, art. 1 § 15 (Ky. 1873), and virtually identical language in the 1894 statutory revision following the adoption of the current constitution.  Ky. Stat. § 3844 (1894).

[13] *See* 1 MOREHEAD & BROWN, at 85-90.

the framework of CR 25.01 demonstrates that all serve different purposes, none are superfluous, and inform our decision in this case. The first two sentences of CR 25.01(1) provide: "[i]f a party dies during the pendency of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties. If substitution is not so made the action may be dismissed as to the deceased party." (Emphasis added). A wrongful death action, because filed by a personal representative, survives the death of the personal representative (or does not permanently abate and is subject to revival by substitution) by virtue of KRS 395.280. Similarly, a personal injury claim survives (or does not permanently abate and is subject to revival by substitution) by virtue of KRS 411.140. In other words, these sections are the statutory authority, upon the death of a party, for such claims "not [being] thereby extinguished," and KRS 395.278 in both instances provides the one-year period allowed by law for substitution.

To be clear, Shanita, as administratrix, filed the wrongful death action on behalf of Ayanna's estate. When Shanita, who was a party, died, KRS 395.280 provided that the wrongful death claim did not permanently abate, but rather became dormant and was subject to revival by timely substitution. When timely revival did not occur with one year, KRS 395.278, the wrongful death action was properly subject to dismissal. CR 25.01(1).

Similarly, Lena individually filed a personal injury claim. When she died, KRS 411.140 provided the authority that her personal injury claim did not abate but was subject to revival by timely substitution. Initially, this occurred,

14

and Shanita as administratrix was substituted as a party. However, when Shanita died, the claim was again rendered dormant but was subject to revival by timely substitution. Again, when timely revival did not occur with one year, KRS 395.278, Lena's personal injury claim was properly subject to dismissal. CR 25.01(1).

### B. *Real Party in Interest versus Nominal Party*

While the foregoing analysis resolves the issues in this matter, Appellees raise additional points that these clear, simple, easily applied statutes somehow do not apply because of a distinction in whether a personal representative is a real party in interest or merely a nominal party.

The Appellees advocate that we draw a distinction between a personal representative as a nominal party as opposed to a real party in interest. This "choice" ignores that in almost any postmortem litigation, the personal representative is not only a necessary party but also the only party authorized by statute to bring or defend actions. *See* KRS 395.195(19) (granting personal representative the power to "[p]rosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties[]"); KRS 396.055(1) (actions on disallowed claims to be brought against personal representative); KRS 411.130(1) (wrongful death action "shall be prosecuted by the personal representative of the deceased[]").[14]

---

[14] Our case law recognizes exceptions to the statutory requirement of the personal representative bringing a wrongful death action in the instances of refusal by the personal representative to bring the action, fraud, or collusion. *Louisville &*

15

Our case law recognizes the personal representative as a necessary party. *Knox Cnty. v. Kelly's Adm'x*, 268 Ky. 361, 364, 105 S.W.2d 141, 142 (1937). Further, CR 17.01 states "[e]very action shall be prosecuted in the name of the real party in interest, but a personal representative . . . may bring an action without joining the party or parties for whose benefit it is prosecuted." This civil rule reinforces the statutory framework that estate beneficiaries or wrongful death beneficiaries are not necessary parties to postmortem litigation; the personal representative is. To quote our predecessor court, "beneficiaries of the [wrongful death] action are not proper parties." *Turner*, 290 Ky. at 606, 162 S.W.2d at 221.

Unlike corporations[15] or limited liability companies,[16] the legislature has not seen fit to endow estates as legal entities. *Bolen v. Bolen*, 169 S.W.3d 59, 61 n.2 (Ky. App. 2005). The statutes referenced above, KRS 395.195, KRS 396.055, and KRS 413.130, as well as all of KRS Chapters 395 and 396, lead

---

*Nashville R.R. Co. v. Turner*, 290 Ky. 602, 606, 162 S.W.2d 219, 221 (1942). Neither refusal, fraud, nor collusion has been alleged in this case.

[15] By statute, "[t]he corporate existence shall begin when the articles of incorporation are filed by the Secretary of State." KRS 271B.2-030(1). Among the general powers of a corporation are the powers "to do all things necessary or convenient to carry out its business and affairs, including without limitation power to: (a) Sue and be sued, complain and defend in its corporate name[.]" KRS 271B.3-020(1); *see Schultz v. Gen. Elec. Healthcare Fin. Servs. Inc.*, 360 S.W.3d 171, 174 (Ky. 2012) (stating "widely accepted" general rule "that a corporation should be viewed as a separate legal entity[]").

[16] A limited liability company ("LLC") is expressly designated by statute as "a legal entity distinct from its members[,]" KRS 275.010(2), and members of an LLC are not proper parties in any action by or against the LLC. KRS 275.155. *See also Turner v. Andrew*, 413 S.W.3d 272, 277 (Ky. 2013) (holding that only proper party to bring suit for lost business income was the LLC and not its sole member).

to that conclusion. Resolution of whether an estate is or is not a legal entity is not, however, essential to our decision.

While an administrator has been referred to as a "nominal party" in our case law—since he/she/it pursues or defends actions on behalf of the beneficiaries—that same case law, statutes, and our rules recognize that the administrator is the only party with power to initiate or defend actions. *See Thomas' Adm'r v. Maysville Gas Co.*, 112 Ky. 569, 575, 66 S.W. 398, 399 (1902); KRS 395.195(19) (personal representatives' power to sue or defend actions); KRS 396.055 (actions to enforce denied claims to be brought against personal representative).[17]

*1. Wrongful death claim.*

In *Pete v. Anderson*, 413 S.W.3d 291, 300 (Ky. 2013), we reiterated that "the personal representative is the only party that may *maintain* the wrongful death cause of action on behalf of the estate." We stated "[t]his contention is uncontested as the plain language of the statute supports it." *Id.* We further reaffirmed that the personal representative is a nominal party, and the statutorily identified beneficiaries are the real parties in interest. *Id.* at 299-301. As to the estate, we pointedly held, "[b]ased on the plain language of KRS 411.130 and our holding in *Ping* [*v. Beverly Enterprises, Inc.*], we must reject

---

[17] Our case law has vacillated in referring to a personal representative as "real party in interest" or as "nominal party." *Compare, e.g., Hammons v. Tremco, Inc.*, 887 S.W.2d 336, 338 (Ky. 1994) ("real party in interest"), *and Snyder v. Snyder*, 769 S.W.2d 70, 72 (Ky. App. 1989) ("real party in interest"), *with Pete v. Anderson*, 413 S.W.3d 291, 300 (Ky. 2013) ("nominal party"). Our opinion and resolution of the matter before us does not require resolution of this discrepancy.

[the] contention that the wrongful death action belongs to the estate." *Id.* at 301 (emphasis added). Since the wrongful death beneficiaries, the real parties in interest, are not proper parties to a wrongful death action, *Turner*, 290 Ky. at 606, 162 S.W.2d at 221; *Thomas' Adm'r*, 112 Ky. at 575, 66 S.W. at 399, and because the action does not belong to the estate, only one possible party exists before the court: the personal representative. And here, that party, Shanita, died. As discussed, *supra*, KRS 395.280 is the statutory authority that the wrongful death action does not permanently abate, and revival by substitution is permissible, but KRS 395.278 requires that revival be made within one year.

Less than two years ago, we clarified that revival is accomplished by substitution, and that a two-part process is unnecessary. *Currin*, 615 S.W.3d 34. We stated,

> From the beginning, revival was a means by which the legislature sought to alleviate the already harsh realities of death. Revival was, and continues to be, a vehicle by which successors-in-interest give notice to the court of the passing of the original party and signal their intent to take on the rights and liabilities associated with the original action.

*Id.* at 38-39. We affirmed that "KRS 395.278 is a statute of limitation, and that a motion for substitution properly filed with the court in accordance with CR 25.01(1) within the one-year allotted by the legislature constitutes revival." *Id.* at 39. Furthermore, this Court and its predecessor have held time and again that KRS 395.278 is a statute of limitations and is not subject to extension. *Hardin Cnty. v. Wilkerson*, 255 S.W.3d 923, 926-27 (Ky. 2008); *Hammons*, 887 S.W.2d at 337; *Daniel*, 445 S.W.2d at 701.

18

Neither *Wheeler v. Hartford Accident & Indemnity Co.*, 560 S.W.2d 816 (Ky. 1978) nor *Vaughn's Administrator v. Louisville & Nashville Railroad Co.*, 297 Ky. 309, 179 S.W.2d 441 (1944), compel a different result. *Wheeler* merely stands for the proposition that the personal representative is the sole, exclusive party to maintain a wrongful death action, 560 S.W.2d at 819, and the decedent's father's, who acted as personal representative, settlement and release with an insurance company of "all claims arising out of the death of [the deceased]," served as a release of the tortfeasor. *Id.* at 817. Consequently, the deceased's mother, as wrongful death beneficiary, was precluded from asserting an independent wrongful death claim. *Id.* at 819.

*Vaughn's Administrator* involved the application of the doctrine of res judicata to a unique factual situation involving two lawsuits arising out of the death of three boys in a vehicle which collided with a train at a crossing. In the first action, the administrators of two boys who were passengers in the vehicle sued the railroad and the parents of the driver. 297 Ky. at 311, 179 S.W.2d at 442. The claim against the parents was based on their vicarious liability for the negligence of the driver as their employee. *Id.* A jury returned a verdict in favor of the plaintiffs and against both sets of defendants. *Id.* at 312, 179 S.W.2d at 443. The second action was the wrongful death claim by the driver's father, as administrator, against the railroad. The railroad defended on grounds of res judicata, based on the driver's negligence as determined in the first action. Our predecessor court held that because the parents had participated as parties in the first action in which their son's negligence had

19

been determined, and because the wrongful death action was prosecuted by the administrator, not for his, but for their benefit, they were estopped to relitigate the question of their son's negligence. *Id.* at 315-16, 179 S.W.2d 444-45. The issue of revival and substitution was not an issue and was not addressed.

The proper resolution of this matter is that the trial court properly dismissed the claim of the Estate of Ayanna Henry against AWH and Mr. Roof for failure to timely revive the wrongful death claim by substitution of an administrator/rix *de bonis non* within one year of the death of Shanita.

*2. Personal Injury Claim.*

With regard to the personal injury claim, as an initial matter, any argument that CR 25.01 is limited to the original party filing the action is simply untenable. The rule provides,

> (1) **If a party dies** during the pendency of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties. If substitution is not so made the action may be dismissed as to the deceased party. **The motion for substitution may be made by the successors** or representatives **of the deceased party** or by any party. . . .

CR 25.01 (emphasis added). No doubt exists but that Shanita, in a fiduciary capacity, was a party plaintiff following her substitution to Lena's claim. Furthermore, KRS 395.278 contemplates the possibility of sequential revival(s) in requiring "[a]n application to revive an action in the name of the representative or **successor of a plaintiff** . . . shall be made within one year after the death of a deceased party." (emphasis added).

20

In the context of estate administration, the term "successor" is a term of art and refers to a second or subsequent person or entity appointed by the district court. *See* KRS 395.280 (stating "[w]hen any personal representative commences an action or is sued, and then dies, is removed or is superseded by another before the termination of the action, **his successor** may, by order of court, be substituted for the original plaintiff or defendant[]") (emphasis added);[18] KRS 395.300 (authorizing "[a]n administrator de bonis non or **any other successor appointed in the place of a personal representative** who has resigned or has been removed or whose letters have been revoked, or who has ceased to act or has died, may maintain an action against the former personal representative[.]") (emphasis added); *see also Robertson v. Robertson's Adm'r,* 174 Ky. 836, 838, 192 S.W. 878, 878–79 (1917) (stating that following death of executrix, action should have been revived in the name of **her "successor in the office of executor of the estate of her husband**, and not by her administrator[]") (emphasis added); *Thomas' Adm'r,* 112 Ky. at 574-75, 66 S.W. at 399 (holding that following death of administrator, trial court erred in denying revival by **his successor, the administrator *de bonis non***) (emphasis added).

The Appellees argue that because Lena's claim was timely revived by the substitution of Shanita as administratrix, no further revival is necessary or

---

[18] By its clear and simple terms, KRS 395.280 applies only to an action brought by or against a personal representative. As Lena filed her own personal injury claim, we only need consider the impact of KRS 395.278 on the facts of this case.

required.  As previously explained, this interpretation does not comport with the statute's plain language or case law.  In this case, Lena, the original plaintiff, died.  Shanita, her administratrix, *i.e.*, her representative, properly revived that action by substitution, and thereby became the party plaintiff.  When Shanita died, her successor, Cochran, properly designated as administrator *de bonis non* of Lena's estate, was required to revive again, by substitution, the personal injury action as successor to Shanita.  Unfortunately, this second revival/substitution would have been untimely since he was appointed over two years after her death.  KRS 395.278 clearly contemplates successive personal representatives, and provides that timely revival, within one year of the personal representative's death, is required in each case.

## IV.    CONCLUSION

As demonstrated in this case, several problems arise in ignoring the statutory requirement that a successor personal representative be substituted within a year.  Years can pass with no resolution or movement towards resolution.  Legitimate questions arise as to whom exactly "Appellees' counsel" represents.  Repetition is unnecessary of the extensive issues, including possible violations of the Rules of Professional Conduct, all as set out in note 8, *supra*, occasioned by the failure to timely notify opposing counsel of Shanita's death and to secure the appointment of a successor personal representative.  Suffice to say, this family, the Bailey/Henry family, appears not to have been served well in the prosecution of this case.

22

In this case, at oral argument, "Appellees' counsel" conceded that he has no client. The parties have represented that Brian Cochran, the administrator *de bonis non* of both the Estates of Ayanna Henry and Lena Bailey, died over a year ago.[19] When asked, "who [sic] do you represent?", counsel answered, "the family." Unless we are willing to grant representation to "the family," or perhaps to the "real parties in interest" who are not actual parties to this litigation, CR 17.01, we ignore the plain provisions of KRS Chapter 395 which repose authority in the duly-appointed and acting personal representative, whose statutory powers are to be exercised "reasonably for the benefit of the interested persons[.]" KRS 395.195. And when that representative dies, as in this case, her powers die with her, and only with the appointment of a successor, an administrator/rix *de bonis non*, can that successor rehire counsel and then revive the action.

Finally, the facts of this case are tragic. And while it may be that some events were out of the control of anyone involved in this case, compliance with KRS 395.278 was not. The procedures and rules imposed specifically by KRS 395.278 and CR 25.01 and generally by KRS Chapter 395 are simple and relatively easy to follow, as anyone with even a passing familiarity with Kentucky probate and administration practice can attest. Once Shanita Bailey

---

[19] Mr. Cochran's death occurred on August 11, 2022, as confirmed by his obituary listed on the website of the A.D. Porters & Sons Funeral Home, Louisville, Ky. (source: https://www.adporters.com/obituaries/Brian-Cochran/-!/TributeWall) (last accessed Aug. 26, 2023). The obituary states that he is "survived by his grandchildren, Aniya Henry, Braylen Abren, Brandon Abren, Jr., Brian Bailey[.]"

23

died, KRS 395.278 imposed a strict one-year limitation on revival of the wrongful death claim with respect to Ayanna Henry and the personal injury claim of Lena Bailey. Counsel was clearly aware of the necessity for revival because Shanita Bailey was timely appointed as administratrix of Lena Bailey's estate and that action initially revived. Following Shanita Bailey's death, a delay of over two years in appointing her successor was simply unconscionable, especially given the availability of securing the appointment of the Jefferson County Public Administrator.[20] Accepting the Appellees' arguments as to why

---

[20] KRS 395.380(1) states that "[t]he District Court of each county shall appoint a discreet, fit person to act as administrator of decedents' estates of which there is no personal representative[.]" The subsequent section, KRS 395.390, provides,

> (1) The District Court of a county which has a public administrator and guardian shall, after the expiration of sixty (60) days from the death of the decedent, order the public administrator and guardian to administer the estate of the decedent where the surviving spouse and heirs waive their right to be appointed, or if the surviving spouse does not nominate a suitable administrator, or in the event any of the persons designated in KRS 395.040 are unable, or found to be incapable of handling or managing the estate, or if from any other cause there is no personal representative. If there is no public administrator and guardian, the court shall order the sheriff to administer the estate.

KRS 395.390. Whatever may be the case in other counties, Jefferson County has an active Public Administrator. *See* Andrew Wolfson, *Lawyers in Ugly Fight to Snag Lucrative Job You've Probably Never Heard of*, COURIER JOURNAL, Jan. 14, 2019 (detailing 2019 contest for selection as Jefferson County Public Administrator, in which position Hon. Chris Meinhart had served for almost 20 years). Any suggestion that the appointment of the Public Administrator would have delayed this matter or imposed a needless hurdle is simply incorrect, since securing that appointment would have taken a matter of weeks, if not days. *See* Jefferson District Court Local Rule 4 (in a large county like Jefferson, probate dockets are usually called daily). The Appellees' Briefs note that this case implicates consideration of "open courts." This assertion seems somewhat ironic considering that Appellees' counsel held the keys to the courts and could have easily opened the doors following Shanita Bailey's death.

We reiterate the further irony of the fact, as previously noted, that Chris Meinhart, the then serving Jefferson Public Administrator, was appointed as administrator for Ayanna's Estate on July 23, 2015, but that the Order of Appointment was rescinded, and Shanita Bailey was appointed in January 2016. *Estate of Ayanna Henry*, Jefferson Dist. Ct., 15-P-002281. The issues in this case

24

KRS 395.278 should not apply in this case effectively overrules *Pete v. Anderson,* contravenes a number of statutes within KRS Chapter 395, will create needless confusion among our bench and bar as to when KRS 395.278 may or may not apply in the future, and calls into question settled principles of principal/agent law. The better decision is simply to apply the statute as written.

The Court of Appeals is reversed, and the Jefferson Circuit Court's summary judgment is reinstated. This matter is remanded to the Jefferson Circuit Court for such matters as remain unresolved.

VanMeter, C.J.; Conley, Keller, Lambert, Nickell, and Thompson, JJ., sitting. Conley, Lambert, Nickell, and Thompson, JJ., concur. Keller, J., dissents by separate opinion. Bisig, J., not sitting

KELLER, J., DISSENTING: The question at issue in this appeal can be simply stated but is not so simply answered: Does the one-year statute of limitations for revival under Kentucky Revised Statutes (KRS) 395.278 apply to the substitution of an *administrator de bonis non* upon the death of a personal representative? Because I find that the death of a personal representative, a mere nominal party, does not trigger the requirement of revival, I believe the answer is no and dissent from the Majority. Such a conclusion is further

could have been easily avoided if that appointment had not been rescinded, and if Meinhart had been timely appointed in Lena's Estate and her personal injury action timely revived.

25

evidenced by the modern statutory framework encompassing revival and substitution, and the legislative history of those statutes.

Revival and substitution each occupy distinct territories in this Commonwealth's probate practice framework. Upon the death of a party in interest to a pending action, "that action is abated and lies dormant until it is revived by a proper successor-in-interest." *Estate of Benton v. Currin,* 615 S.W.3d 34, 36 (Ky. 2021). An application to "revive" that action is "a vehicle by which successors-in-interest **give notice** to the court of the passing of the original party and signal their intent to take on the rights and liability associated with the original action." *Id.* at 39 (emphasis added). Conversely, "substitution" has long been merely the summary mechanism the court employs to insert the correct parties into a pending action. *See Substitution of Parties,* BLACK'S LAW DICTIONARY (11th ed. 2019) (The replacement of one litigant by another because of the first litigant's death . . . ."). A court may order substitution of the proper parties for a myriad of reasons not limited to the death of a party in interest. *See* Kentucky Rule of Civil Procedure (CR) 25.02 (incompetency); CR 25.03 (transfer of property interest); CR 25.04 (death, resignation, replacement, or removal of a public official).

Until recently, Kentucky's courts operated under a two-step framework that required, upon the death of a party, any successor-in-interest seeking both to revive an action and substitute himself in that action to file two independent motions. This Court, in *Estate of Benton,* held that a lone motion for substitution was sufficient to constitute revival, because such a motion

26

provides the notice necessary for revival. 615 S.W.3d at 39 ("Substitution of the proper parties accomplished that goal."). However, this Court did not hold that revival, in and of itself, would be sufficient to constitute a substitution. Perhaps this is because a motion for substitution requires the court to "ascertain and evaluate whether the individual or entity filing the motion for substitution is appropriate," whereas a motion for revival places no such responsibilities on the court. *Id.* at 39 n.16. While revival and substitution are often accomplished contemporaneously upon the death of a real party in interest, it is clear the two exist separately. If they did not, there would be no sense in employing the two separate concepts. As such, I believe that when the legislature explicitly makes a conscious choice to denote either revival or substitution, this Court should listen.

I agree with the Majority that upon the death of a party in interest to a pending action, "that action is abated and lies dormant until it is revived by a proper successor-in-interest." *Id.* at 36. However, the Majority gives little credence to this Commonwealth's caselaw differentiating a "real party in interest" from a merely "nominal party." That distinction is crucial, as the death of a mere nominal party does not trigger the requirement of revival – only substitution.

Under Kentucky Rule of Civil Procedure (CR) 17.01, "Every action shall be prosecuted in the name of the real party in interest, **but** a personal representative . . . may bring an action without joining the party or parties for whose benefit it is prosecuted." (emphasis added). By use of the conjunction

27

"but," this rule makes clear that a personal representative is not the real party in interest. *See* 2 Ky. Prac. Prob. Prac. & Proc. *Necessary Parties* § 1867 (2022) ("[I]t may be said generally that every action shall be prosecuted in the name of the real party in interest except that certain fiduciaries including personal representatives . . . may maintain an action without joining the parties for whose benefit the action is prosecuted."). Instead, in wrongful death actions "[t]he administrator [or personal representative] is merely a nominal plaintiff. The real parties in interest are the beneficiaries whom he represents." *Vaughn's Adm'r v. Louisville & N.R. Co.*, 179 S.W.2d 441, 445 (1944); *see also Pete v. Anderson*, 413 S.W.3d 291, 299 (Ky. 2013). The personal representative's status as a necessary party in a wrongful death action, as noted by the Majority, does not change this distinction, as the "cause of action [is] for the sole benefit of [the] named beneficiaries." *Id.* The same is true for a personal representative of an estate in any other type of action, including a personal injury action of a deceased that has been revived, because the true party in interest is the estate of the deceased. *See Pete*, 413 S.W.3d at 300 (citing *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 598–99 (Ky. 2012)) ("[A] survival action is derivative of a personal injury claim which belongs to the estate.")

The replacement of a nominal party, such as a personal representative, regardless of reason, does not trigger a requirement for revival of the claim, as there has not been a change to the real party in interest to the claim. This is consistent with the "general rule . . . that an action does not abate by reason of the death of a person where the action was brought by or against a person in a

28

representative capacity, or by or against a person in the capacity as a public officer." 1 C.J.S. *Abatement and Revival* § 134 (2023) (footnotes omitted); *see also Bowles v. Bowles*, 18 S.W.2d 989, 990–91 (1929) ("The action was not of the kind that abated on the death of [the] administratrix . . . . [S]he was a mere nominal plaintiff."); *Thomas' Adm'r v. Maysville Gas Co.*, 66 S.W. 398 (1902). Perhaps this is because the real party in interest is readily identifiable, and still "before the court." *See Koehler v. Com. by and ex rel. Luckett*, 432 S.W.2d 397, 399 (Ky. 1968); *Goben v. Keeney*, 626 S.W.3d 692, 695, n.4 (Ky. App. 2021). Upon the death or removal of a nominal party, the real party in interest remains, and only a substitution of a new nominal party is required.

Accordingly, I reach a conclusion opposite that of the Majority: the one-year statute of limitations governing revival, KRS 395.278, is inapplicable to the claims before this Court today because the death of a mere nominal party does not trigger the requirement of revival, only substitution. I find this conclusion is further supported, and even confirmed, by the plain language of the statutes, and their legislative history, governing both revival and substitution, ever mindful that "the 'plain meaning' of the statute controls." *Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky. 2009).

KRS 411.140 allows for certain personal injury claims to survive after the death of the person injured. The statute requires those claims to either be (1) brought by the personal representative of the estate of the deceased injured person or (2) revived by the personal representative of the estate if the decedent had initiated the claim prior to his or her death. This statute and its

29

predecessor statutes have explicitly required revival in the above-described circumstance since at least 1812, according to the Majority. KRS 395.278, in turn, provides the statute of limitations for revival of a claim. It is a general statute and applies to all types of claims that are not extinguished by the death of a party and that require revival.

KRS 395.280, on the other hand, allows for certain claims to survive after the death of a personal representative. It applies only when a "personal representative commences an action or is sued" and subsequently "dies, is removed or is superseded by another" while the action is still pending. In those specific circumstances, the legislature has delineated that the deceased personal representative's successor may be **substituted** by the court. This more specific statute does not mention revival at all and assigns no statute of limitations upon substitution. I assert that KRS 395.280's absence of any reference to revival is confirmation of the legislature's understanding that the death or removal of a personal representative, a mere nominal party, does not trigger a requirement of revival. CR 25.01, as the Majority correctly observes, is the procedural statute that instructs the court how to substitute a personal representative's successor into a pending action once his predecessor has died or been removed. Like KRS 395.280, CR 25.01 does not reference revival, only substitution. The Majority's holding that a claim must be revived when a personal representative dies adds language to this statutory scheme that does not exist.

30

The Majority traces the history of KRS 395.280 back to 1842. The 1842 version of the statute stated that when an executor or administrator died or was no longer in office, the claim to which he was a party could be **revived**. The Majority then explains that "the legislature undertook a wholesale revision of the statutes in 1852." The 1852 statute looks much more similar to today's version of KRS 395.280 than did its predecessor. In 1852, the legislature changed the statute to no longer reference **revival** of a claim after the death of the personal representative but instead to say that a successor may be **substituted**. As the Majority notes, the same language was included in the 1873 statutory revision and virtually identical language was included in the 1894 statutory revision.

The current version of KRS 395.280, which only references substitution and does not mention revival, was enacted in 1942 and has remained unchanged since then. This is true even after the significant work of the Civil Code Committee in the early 1950s and the repeal of KRS 395.275-.277 and enactment of KRS 395.278 in 1974. As previously stated, I believe the legislature's conscious choice to remove revival from KRS 395.280's predecessor statutes and require only substitution is evidence of its understanding that the death of a personal representative does not trigger the requirement of revival.

Revival has continued to have a one-year statute of limitations while substitution has continued to have no statute of limitations attached. It seems clear to me that "the legislature has been proactive in amending" the relevant

31

statutes and yet has declined to expressly apply a statute of limitations to substitution of parties. *Hughes v. UPS Supply Chain Sols., Inc.*, No. 2021-SC-0444-DG, 2023 WL 5444612, at *5 (Ky. Aug. 24, 2023) (to be published). Under the plain language of the relevant statutes, there is no express statute of limitations applicable to the mere substitution of a personal representative.

Having explained the critical difference between a nominal party and a real party in interest, as well as the impact of that difference on the requirements of revival and/or substitution, I now must apply those differences to the claims before us today. As the Majority accurately described, we have two claims before us. The first is Lena Bailey's personal injury claim which was successfully revived by Shanita Bailey, as administratrix of Lena's estate, prior to Shanita's death. The second is Ayanna Henry's wrongful death claim brought by Shanita, as administratrix of Ayanna's estate, prior to Shanita's death. Shanita, at the time of her death, was the nominal plaintiff prosecuting each claim. Because she was only a nominal party in each claim, her death did not trigger a requirement that the claims be revived. At all times during the litigation the trial court had the real parties in interest before it – the estates of Lena Bailey and Ayanna Henry. Shanita's death only required that a new nominal party be substituted into the claims as a new personal representative of the estates. Because only substitution was required, the one-year statute of limitations governing revival was inapplicable. Accordingly, the trial court erred in dismissing the claims based on the alleged untimely substitution of a new nominal party.

32

The Majority expresses concern that, absent a statute of limitations, cases such as these can linger in the trial court for years. I find this concern unavailing. This Court has always expressed a desire to allow claims to be resolved on their merits. *See e.g., Mullins v. Commonwealth*, 262 S.W.2d 666, 667 (Ky. 1953). Further, trial courts have mechanisms at their disposal to ensure that cases before them move forward in a timely manner. The facts of this case are tragic and, quite frankly, unlikely to be repeated. The Majority's disposition in this case denies justice to the Bailey/Henry family and results in unnecessary hurdles to the prosecution of claims in the future.

Respectfully, I dissent.

COUNSEL FOR APPELLANT/APPELLEE, MR. ROOF OF LOUISVILLE, LLC:

John R. Martin, Jr.
Hunter Rommelman
Landrum & Shouse, LLP

COUNSEL FOR APPELLANT/APPELLEE, AMERICAN WATER HEATER COMPANY:

Byron Norman Miller
Joseph Andrew Wright
Thompson Miller & Simpson PLC

COUNSEL FOR APPELLEES, THE ESTATE OF AYANNA HENRY, DECEASED (SUCCESSOR ADMINISTRATOR NOT YET APPOINTED):

Kevin Michael Monsour
Bruce Law Group, LLC

Charles E. Soechting, Jr.
Law Offices of Charles E. Soechting, Jr.

COUNSEL FOR APPELLEES, THE ESTATE OF LENA BAILEY, DECEASED (SUCCESSOR ADMINISTRATOR NOT YET APPOINTED):

Kevin Michael Monsour
Bruce Law Group, LLC

Charles E. Soechting, Jr.
Law Offices of Charles E. Soechting, Jr.